IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIAM RYAN,

    Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,
a foreign insurance company,

    Defendant.
_____/

CASE NO.:

Class Action

# CLASS ACTION COMPLAINT FOR DAMAGES

The Plaintiff William Ryan, on behalf of himself and all others similarly situated, files this Class Action Complaint against Allstate Fire and Casualty Insurance Company ("Allstate"), and in support thereof states the following:

## NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiff who was the named insured under an Allstate automobile policy issued for private passenger auto physical damage including comprehensive and collision coverage, which require payment of "Actual Cash Value" or ACV.

2. Defendant Allstate is one of the largest passenger auto insurance carriers operating in Florida, according to the Florida Office of Insurance Regulation 2015 Annual Report. One of the coverages Defendant offers is comprehensive and collision coverage. Upon information and belief, Defendant systematically underpaid not just Plaintiff but

thousands of other putative Class Members amounts Defendant owed its insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage.

3. Pursuant to its standard policy form, Defendant is obligation to pay insureds sales tax, title transfer and registration transfer (sometimes referred to as "tag transfer") fees in making ACV payment to insureds who suffer a total-loss to an insured vehicle. The amount of sales tax owed is not based on the value of the total loss vehicle *when purchased*, nor on the value actually paid for a replacement vehicle, if any; instead, the amount of sales tax owed is based on the adjusted vehicle value of the total-loss vehicle at the time of loss ("ACV sales tax"). Title transfer and tag transfer fees are owed in the amount of the minimum fee amount imposed by the State of Florida as a necessarily-incurred cost in replacing the total-loss vehicle.

4. This lawsuit is brought by the Plaintiff and all other similarly situated insureds who have suffered damages due to Defendant's practice of refusing to pay full ACV sales tax and mandatory regulatory fees to first-party total-loss insureds on physical damage policies containing comprehensive and collision coverages.

5. The failure to pay ACV sales tax, title transfer fees and tag transfer fees on first-party total losses owed to Allstate insureds pursuant to the policy language is a breach of the policy and violates Florida law.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative class which consists of at least 100 members and he and the Defendant are citizens of different states; (b) the amount-in-controversy

exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

7. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and the Defendant is subject to personal jurisdiction in this district.

## THE PARTIES

8. At all times material hereto, the Plaintiff William Ryan is and was a person domiciled and residing in Volusia County, Florida, and is a citizen of the State of Florida.

9. At all times material hereto, the Defendant Allstate is and was a foreign corporation located in the State of Illinois, incorporated in Illinois, with its principal place of business in Illinois and authorized to transact insurance in the State of Florida.

## AMOUNT-IN-CONTROVERSY

10. Defendant is the 3rd largest physical damage auto insurer in Florida based on premiums written. Ex. A (Market Share Report) pg. 359.

11. Upon information and belief and the investigation of his attorneys, including total loss rates per physical damage premiums written by insurers in similar litigation as the present claim, Defendant insurer, during the relevant time period, adjusted, at minimum, approximately 60,000 total-loss claims.

12. The average total-loss claim vehicle value during the relevant time period was approximately $20,000. During the relevant time period, the State of Florida's sales tax rate was and is 6%. Even assuming a conservative average value of $15,000 would result in sales tax of $900 per claim, not even including local surtax (which ranges from 0% to 2% depending on county).

13. During the relevant time period, the State of Florida imposed a mandatory minimum title transfer fee of $75.25 and a mandatory minimum tag transfer fee of $4.60.

14. Plaintiff's claim, as further set out herein, alleges that Defendant's contract obliges it to include ACV sales tax, title transfer fees, and tag transfer fees to its insureds (including Plaintiff) in the event of a total loss, and that Defendant nevertheless declines to include such amounts, which constitutes a breach of contract. Because Defendant adjusted approximately 60,000 total-loss claims, and the average claim is approximately $900 (a conservative estimate that does not include transfer fees, local surtax, prejudgment interest, or attorney's fees), the fact that the amount-in-controversy exceeds $5,000,000 is plainly stated on the face of the documents and is "readily deducible" from these pleadings. Lowery v. Ala. Power Co., 483 F.3d 1184, 1211 (11th Cir. 2007).

## FACTUAL ALLEGATIONS

15. Defendant Allstate's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in Allstate auto policies issued by Defendant in Florida.

16. ACV includes an obligation to pay sales tax in Florida equal to at least six percent[1] of the adjusted vehicle value of the insured vehicle at the time of loss (ACV Sales Tax), along with title transfer fees and tag transfer fees for total loss vehicle comprehensive and collision coverage.

17. At all times material hereto, Plaintiff Ryan leased and insured a 2015 Kia Sorento EX, VIN # 5XYKU4A75FGG39350 ("Insured Vehicle").

---

[1] Florida's sales tax is 6%. Additionally, some counties impose a local sales tax of up to 1.5% on top of the 6% state sales tax, applicable to the first $5,000.

18. At all times material hereto, Plaintiff insured the 2015 Kia Sorento EX under an insurance policy issued by Defendant.  Ex. B (composite Policy-related documents).

19. On or about July 15, 2017, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 000467099585001.

20. Following the filing of said claim, Defendant determined that the Insured Vehicle was a total loss with a base value of $21,725.00, a condition adjustment of $467.00, and an adjusted vehicle value of $22,192.00. Ex. C (Market Valuation Report).

21. The base value and adjusted vehicle value were calculated by a third-party vendor ("CCC") who bases vehicles valuations on the cost to purchase similar vehicles with similar conditions and mileage, with adjustments based on the total-loss vehicle condition relative to the comparable vehicle condition. No amounts for sales tax or tag or title transfer fees were included in the calculation.

22. Further, Defendant did not include ACV sales tax in making payment, nor did Defendant include title transfer fees, tag transfer fees or any other amount in making ACV payment. Instead, Defendant paid only the "base value" plus a "condition adjustment" of the vehicle – in other words, Defendant paid only the underlying value of the vehicle.

23. Defendant's payment of merely the "base value" and "condition adjustment" – and not ACV sales tax, title transfer fees, or tag transfer fees – constituted a breach of its insurance policy.

24. Sales tax, title transfer fees, and tag transfer fees are mandatory applicable costs that must be paid to replace any vehicle in the State of Florida.

25. Florida law requires that all vehicles be properly titled and registered in order to be legally driven on Florida roadways. Fla. Stat. § 319.34 (title requirements); § 320.02 (registration requirements).

26. The fee to transfer title to a vehicle is, at minimum, $75.25. The fee to transfer tag to a vehicle is, at minimum, $4.60.

27. Further, Florida law requires that a minimum of 6% sales tax be paid on every motor vehicle purchased. The minimum sales tax owed for total-loss claims is 6% of the adjusted value of the insured vehicle. Additionally, counties within Florida may impose an additional surtax on the first $5,000 of vehicle value.

28. No private-passenger replacement vehicle in Florida can be procured without payment of sales tax and minimum mandatory title and tag transfer fees.

29. Plaintiff was owed sales tax in the amount of 6% of the agreed value of her vehicle, local surtax of 1%, title transfer fees of $75.25, and tag transfer fees of $4.60.

30. In breach of its contract with Plaintiff, Defendant did not include any sales tax or transfer fees in making the ACV payment for Plaintiff's total loss.

31. Mr. Ryan paid all premiums owed and otherwise satisfied all conditions precedent such that his insurance policy was in effect and operational at the time of the accident.

### ALLSTATE AUTO INSURANCE COMPANY POLICY

32. The insurance policy (Ex. B), under the section Part V entitled "Protection Against Loss To the Auto" (p. 21)[2], states that "Collision Insurance" means coverage for "loss to your insured auto or a non-owned auto (including insured loss to an attached trailer) a collision with another object or by upset of that auto or trailer."

---

[2] Citations to the policy page numbers are pinpointed to the actual policy page number, rather than to the page number of the composite exhibit.

33. The "insured auto" is defined, *inter alia*, "any auto described on the Policy Declarations." Id. at 23.

34. The Florida Amendatory Endorsement – AFA61-3 "Limits of Liability" (Id. p. 17), states that in the event of loss, the limit of liability is the "actual cash value of the property at the time of loss, which may include a deduction for depreciation."

35. ACV is not defined in the Policy. The Policy includes definitions for certain terms, which are then bolded throughout the Policy. ACV is not included as a "defined term" and is not bolded in the Policy.

36. There is no difference, for purposes of the duty to pay ACV on a first-party total loss claim, between a collision total-loss claim and a comprehensive total-loss claim.

37. Clearly, then, the policy language does not further define ACV as including: (1) any provision excluding sales tax or state and local regulatory fees from ACV; (2) any provision deferring payment of the ACV Sales Tax and state or local regulatory fees for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all; (4) any provision requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving ACV Sales Tax or state and regulatory fees; or (5) any provision linking the amount of ACV Sales Tax or state and regulatory fees to a particular replacement vehicle and the corresponding sales tax or state or local regulatory fees on said replacement vehicle.

38. The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased, insured autos are considered "owned" or are treated and defined identically for purposes of the policy. Id. at 1.

## PAYMENT OF SALES TAX AND MANDATORY FEES

39. Florida law is clear that courts cannot limit the scope of a term, if it is not defined in the policy, to a narrow definition that benefits the insurer; in fact, if policy language is susceptible to more than one reasonable interpretation, it is construed in the light that would grant coverage, i.e. to the benefit of the insured and against the insurer. *Travelers Indem. Co. v. PCR Inc.,* 889 So. 2d 779 (Fla. 2004).

40. The 11th Circuit interpreted Florida law as requiring payment of sales tax in ACV policies where sales tax is reasonably likely to be incurred upon replacement. Mills v. Foremost Insurance Co., 511 F.3d 1300, 1306 (11th Cir. 2008).

41. The Middle District, interpreting Florida law, has held that where, as here, ACV is not defined in an auto policy, it means "replacement costs minus depreciation" and includes the obligation to pay costs reasonably likely to be incurred when replacing property.

42. Market value in Florida is defined and calculated as the cost to replace a vehicle minus depreciation. Fuchs v. Robbins, 738 So.2d 338, 342 n. 9 (Fla. 3d DCA 1999); Trinidad v. Florida Peninsula Insurance Co., 121 So.3d 433, 438 (Fla. 2013).

43. Defendant's policy promises to provide those costs reasonably likely to be incurred upon replacement, including ACV sales tax and mandatory title/tag transfer fees. Nevertheless, Defendant declines to actually include ACV sales tax and title/tag transfer fees in making payment to total-loss insureds, thereby breaching its contracts with insureds.

## CLASS ALLEGATIONS

44. Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

45. Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> All insureds under a Florida policy issued by Allstate Fire and Casualty Insurance Company with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, whose claim was adjusted as a total loss under comprehensive or collision coverage, and where the total-loss payment did not include full ACV sales tax, title transfer fee amounts, and/or tag transfer fee amounts, within the five year time period prior to the date on which this lawsuit was filed until the date of any certification order.

46. The issues related to Plaintiff's claim do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

47. Certification of the above classes is also supported by the following considerations:

   a. The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;

   b. Counsel in this class action is not aware of any previously filed litigation against Defendant in which any of the members of the classes are parties and which any question of law or fact in the subject action can be adjudicated; and

   c. No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

48. Although the precise number of Class Members are unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is one of the largest motor vehicle insurer in the State of Florida and writes hundreds of millions of dollars of private-passenger physical damage coverage

premiums, the classes of persons affected by Defendant's unlawful practice consists of thousands of individuals or the classes of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity under Fed. R. Civ. P. 23(a)(1) is established.

49. Fed. R. Civ. P. 23(a)(2)'s commonality requirement is also satisfied. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for classwide adjudication. Defendant and all class members are bound by the same materially identical policy terms. Common questions include (but are not limited to): (1) whether, under the Defendant's standardized policy language, insureds are owed ACV Sales Tax, title transfer fees, and tag transfer fees upon the total loss of an insured vehicle; (2) whether Defendant is required to pay sales tax and title transfer fee amounts to insureds who suffer total-losses to vehicles insured under Defendant's Policies; and (3) the amount, if any, in title transfer fees and tag transfer fees owed under the Policy.

50. Fed. R. Civ. P. 23(a)(3)'s typicality requirement is satisfied because Plaintiff and Class Members were injured through Defendant's uniform misconduct. Further, Plaintiff's and Class Members' legal claims arise from the same core practices; namely, the failure to pay full ACV, including sales tax and mandatory transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members. Plaintiff suffered the same harm as all the other Class Members: the coverage

for sales tax and title/tag transfer fees Defendant failed to pay its insureds. Plaintiff is not subject to any unique defenses nor does Plaintiff bring any unique claims.

51. The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same. Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

52. Fed. R. Civ. P. 23(b)(3)'s predominance requirement is satisfied. The previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. The key common question – does Defendant's promise to pay the actual cash value of the total-loss vehicle obligate it to include ACV sales tax and/or mandatory title transfer and tag transfer fees – is identical for every Class Member and will resolve almost the entire case in a single stroke. The measure of damages, if any, is the same for every Class Member, and any variances in damages merely reflects variances in underlying vehicle values, the application of which is a purely ministerial function. Otherwise, there are no individualized questions of fact or law.

53. Further, Rule 23(b)(3)'s superiority requirement is met here – class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Even if some Class Members could afford individual litigation, the court system could not. Thousands of individual cases asserting precisely the same claim that Plaintiff asserts

here would be uneconomical and would strain (indeed, likely overwhelm) judicial resources. Class treatment is superior because every claim – all based on uniform conduct and a form contract – will be conclusively determined by answering the single question of whether Defendant's Policy obligates payment of ACV Sales tax and title/tag transfer fees. It is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. No difficulty would be encountered in the management of this case that would preclude its maintenance as a class action. To the contrary, several other similar total-loss class actions against other insurers (not Defendant) successfully resolved via class treatment.

54. Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the classes. Plaintiff possesses no conflict with members of the Class. Plaintiff's claim does not conflict with that of any class member, and Plaintiff has no financial or any other interest conflicting with those of the Class. Plaintiff fully intends to vigorously protect the interests of Class Members in prosecuting this claim.

55. Plaintiff is committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Moreover, Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

## CLAIM FOR BREACH OF CONTRACT

56. The allegations contained herein are incorporated by reference.

57. This count is brought by Plaintiff Williams Ryan on behalf of himself and the Class Members.

58. Plaintiff was party to an insurance contract with Defendant as described herein. All Class Members were parties to an insurance contract with Defendant containing materially identical terms.

59. The interpretation of Plaintiff and all Class Members' Policies is governed by Florida law.

60. Plaintiff and all Class Members made a claim determined by Defendant to be a first-party total loss under the insurance policy, and determined by Defendant to be a covered claim.

61. Defendant, by paying the total loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their duties and conditions under the Policies for each Plaintiff to be paid on his or her total loss.

62. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and every Class Member were owed the actual cash value of the vehicle, including ACV Sales Tax, title transfer fees and tag transfer fees.

63. Defendant refused to pay ACV Sales Tax, title transfer fees, and/or tag transfer fees to Plaintiff and every Class Member.

64. Defendant's failure to provide coverage for the ACV Sales Tax, title transfer fees, and/or tag transfer fees constitutes a material breach of contract with Plaintiff and every Class Member.

65. As a result of said breaches, Plaintiff and the Class Members are entitled under Defendant's insurance policies to sums representing the benefits owed for ACV Sales

      Tax, title transfer fees, and/or tag transfer fees, as well as costs, prejudgment and postjudgment interest, injunctive relief and other relief as is appropriate.

66. In addition, Plaintiff and the class members are entitled to an award of attorney's fees and costs pursuant to § 627.428 Fla. Stat. and all other other statutory or contractual provisions allowing for attorney's fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff William Ryan, individually and on behalf of the Class, demands a trial by jury on all triable issues and seeks and prays for relief and judgment as follows:

- For an Order certifying this action as a Class Action on behalf of the Class described above;
- For an award of compensatory damages for Plaintiff and Class Members in amounts owed under the Policies;
- For all other damages according to proof;
- For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Fla. Stat. § 627.428;
- For costs of suit incurred herein;
- For pre and post judgment interests on any amounts awarded;
- For other and further forms of relief as this Court deems just and proper.

Dated: May 3, 2019.

                                            Respectfully submitted,

                                            By: */s/ Ed Normand*
                                            Edmund A. Normand
                                            FBN: 865590
                                            By: */s/ Jake Phillips*


Jacob L. Phillips
FBN: 0120130
Normand PLLC
3165 McCrory Place, Ste. 175
Orlando, FL 32803
(407) 603-6031
jacob.phillips@normandpllc.com
service@ednormand.com
ed@ednormand.com

By: */s/ Christopher J. Lynch*
FBN 331041
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchlaw.com